UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LISA MAHER,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security

Defendant.
_______________________________________/

No. C 04-5434 MHP

**MEMORANDUM & ORDER**
**Re: Cross-Motions for Summary Judgment**

Plaintiff Lisa Maher brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability insurance benefits. Now before the court are the parties' cross-motions for summary judgment. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Plaintiff is a forty-one-year-old woman with the equivalent of a high school education and additional specialized training as a medical assistant. TR 213, 220. Prior to ceasing work in 1997, plaintiff had been employed as a phlebotomist. Id. at 215. She has also previously been employed as a receptionist and as a medical assistant. Id.

Plaintiff attributes her allegedly disabling injuries to the fall that she suffered in a K-Mart store in March 1991. Subsequent to the fall, plaintiff developed back pain and bilateral hand numbness, which required her to undergo a laminectomy in 1991 at cervical levels C5-6 and a discectomy with fusion of her cervical vertebrae at C5-7 in 1992. Id. at 289, 299. Five years later, in 1997, plaintiff was diagnosed with cervical strain. Id. at 290, 292. She has not been employed since that time. Id. at 214.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

On February 12, 1999, plaintiff filed applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 et seq., and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33, claiming that she was unable to work because of her injuries. In addition, plaintiff asserted that she was entitled to disability benefits based on her history of depression.[1] The regional Social Security Administration ("SSA") office denied plaintiff's applications on June 29, 1999, concluding that neither her physical nor mental impairments qualified as a "disability" within the meaning of 42 U.S.C. § 423(d).

After the regional SSA office denied her request for reconsideration of its disability determination, plaintiff requested an evidentiary hearing on her application for disability benefits, and a hearing was held before an Administrative Law Judge ("ALJ") on January 6, 2000. Of particular relevance to the adjudication of the instant motions was the ALJ's analysis of medical testimony relating to plaintiff's physical impairment. That testimony included the opinions of three physicians: Dr. Daren Moore, plaintiff's family practitioner; Dr. Norman Fizette, plaintiff's treating internist; and Dr. Joseph Grady, a physician who had examined plaintiff at the request of the Disability Determination Service ("DDS"), a state agency.

According to Dr. Moore's diagnosis, plaintiff suffers from cervical disk disease with radiculopathy. TR 309. Based on the results of Physical Functional Capacity Assessment that he performed in October 1999, Dr. Moore found that plaintiff can sit, stand, or walk for up to ten minutes before needing to change position; that she can sit or stand or walk no more than a total of two to three hours in an eight-hour workday; and that she can lift no more than five pounds occasionally. Id. at 311-14. In addition, Dr. Moore concluded that plaintiff's condition prevents her from using her hands for gross and fine manipulations. Id. at 314. Upon considering these limitations, Dr. Moore concluded that plaintiff would be unable to do fine motor activities involving her upper extremities and that she might be absent from work three or more times a month due to her pain. Id. at 316-17.

Dr. Fizette also evaluated plaintiff prior to the hearing before the ALJ. In an examination conducted in March 1999, Dr. Fitzette observed mild weakness in plaintiff's left arm, a mild

impairment of her fine motor skills, and a reduced range of motion in her neck due to paravertebral muscle spasms. Id. at 299. Based on these observations, he concluded that while plaintiff could no longer work as a phlebotomist due to the impairment of her manual dexterity, she could easily accomplish most routine daily activities. Id.

Dr. Grady's examination of plaintiff took place in April 1999. In that examination, he found that plaintiff had no significant physical limitations, except that she suffered from diminished strength in her left hand and shoulder, a limited range of cervical, dorsolumbar, and left-shoulder motion, and a slight decrease in sensation in both arms. Id. at 300-03. Dr. Grady thus concluded that plaintiff retained the ability to perform fine motor skills with both hands. Id.

Weighing this evidence, the ALJ found that plaintiff's physical impairment did not interfere with plaintiff's ability to perform a full range of light work, including her past relevant work as a medical assistant or as a receptionist. Id. at 160. The ALJ also reached the same conclusion regarding plaintiff's mental impairment. Id. at 156. Accordingly, in an order dated June 1, 2000, the ALJ affirmed the decision of the regional SSA office and denied plaintiff's application for disability benefits. Id. at 154-60.

Plaintiff appealed the termination to the SSA Appeals Council, and on April 11, 2002, the Appeals Council remanded plaintiff's claim to the ALJ for further consideration of the opinions of the treating and examining physicians and for reconsideration of the extent of plaintiff's mental impairment. The Appeals Council also instructed the ALJ to reconsider his assessment of plaintiff's residual functional capacity. Id. at 177-80.

On February 19, 2003, a second hearing was held before the ALJ. Id. at 88. In addition to the evidence that was presented at the January 2002 hearing, the ALJ considered the testimony of Dr. Jack Tippett, who had examined plaintiff in July 2002 at the request of DDS. Dr. Tippett observed that plaintiff suffered from chronic neck strain and irritation of both ulnar nerves along the medial aspect of both elbows. Id. at 354-55. However, he found no evidence of tenderness or muscle spasms in plaintiff's back and concluded that plaintiff exhibited a normal range of motion throughout her shoulders, elbows, wrists, hands, and lower extremities. Id. Based on these observations, Dr. Tippett

UNITED STATES DISTRICT COURT
For the Northern District of California

concluded that plaintiff's upper extremity strength was not impaired. Id.

The Commissioner also heard testimony from Tom Mehaffey, a vocational expert. Dr. Mehaffey testified that a "hypothetical person" limited to low-stress work and able to lift, carry, push, or pull up to ten pounds frequently and twenty pounds occasionally, who requires a sit or stand option while remaining at the work station, and who can occasionally climb, balance, stoop, kneel, crouch, or crawl would not be able to perform any of plaintiff's past relevant work. Id. at 112-13. However, while Dr. Mehaffey also testified that such a person would be able to perform a limited range of alternative jobs, he observed that someone with the same functional limitations plus additional limitations found by Dr. Moore, i.e., moderate limitations in the ability to perform activities within a schedule, to maintain regular attendance, to sustain ordinary routine, and marked limitations on the ability to complete a normal workweek—would not be able to perform any job whatsoever. Id. at 112-13, 116-17.

Considering this testimony together with the evidence presented at the first hearing held on plaintiff's application, the ALJ once again concluded that plaintiff was not disabled within the meaning of the Social Security Act. Specifically, while the ALJ revised his previous finding that plaintiff's impairments did not interfere with her ability to work as a phlebotomist, he nevertheless concluded that plaintiff retained the residual functional capacity to perform a limited range of light work, including several identified alternative jobs, and that those jobs were available in significant numbers in the regional and national economy. Id. at 26-34. Thus, applying the standard set forth in 20 C.F.R. § 404.1520(a)(4)(v), the ALJ again denied plaintiff's application for disability benefits.

On October 22, 2004, the Appeals Council denied plaintiff's request to review the ALJ's determination and adopted his findings as the final decision of the Commissioner. Id. at 11-14. This action for judicial review of the Commissioner's decision followed, and the parties now cross-move for summary judgment on the issue of plaintiff's eligibility for disability benefits. The following memorandum and order addresses that issue.

LEGAL STANDARD

A district court may disturb the Commissioner's final decision on whether a person is disabled

"only if [the decision] is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). The court's view "must consider the record as a whole," including evidence that supports the Commissioner's decision and evidence that detracts from it. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Nonetheless, the ALJ is charged with resolving ambiguities in the evidence, and where evidence exists to support more than one rational interpretations, the court must defer to the ALJ's decision. See Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992). On the other hand, the ALJ's determinations of law are reviewed *de novo*. See McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000). Even if substantial evidence supports the ALJ's fact findings, his decision must be set aside if improper legal standards were applied in reaching that decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

DISCUSSION

The parties' cross-motions for summary judgment require the court to determine whether the Commissioner erred in concluding that plaintiff is not disabled within the meaning of the 42 U.S.C. § 423(d)(1)(A), which defines the term "disability" as "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The five-step process used to make this determination is set forth in 20 C.F.R. § 404.1520(a). In the first step of that process, the Commissioner asks whether the claimant is employed in "substantial gainful activity." Id. § 404.1520(a)(4)(i). If not, the Commissioner proceeds to step two and examines the medical severity of the claimant's impairment. Id. § 404.1520(a)(4)(ii). If the impairment is found to be "severe," step three of the process requires the Commissioner to consider whether the claimant's impairment is equivalent to one of the impairments listed in Appendix 1 of 20 C.F.R. § 404.1520. Id.

UNITED STATES DISTRICT COURT
For the Northern District of California

United States District Court
For the Northern District of California

§ 404.1520(a)(4)(iii). Unless the claimant's impairment falls within one of these categories (thereby warranting a conclusion that he or she is disabled), the Commissioner must then proceed to step four, which requires her to assess the claimant's residual functional capacity and to determine whether he or she is able to perform the physical and mental tasks associated with his or her "past relevant work." Id. § 404.1520(a)(4)(iv). If not, step five requires the Commissioner to assess the claimant's residual functional capacity in light of his or her age, education, and work experience and to determine whether the claimant can adjust to other work. Id. § 404.1520(a)(4)(v). A finding that the claimant is unable to perform the duties of any job available in significant numbers in the regional or national economy warrants a finding that he or she is disabled regardless of whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of 20 C.F.R. § 404.1520. See id. § 404.1566(b); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1464-65 (9th Cir. 1995).

While the claimant bears the burden of proof at each of the first four steps of the process, the burden of proof shifts to the Commissioner where, as here, the claimant has established that he or she is unable to perform the duties associated with his or her "past relevant work." See Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). Plaintiff argues that the Commissioner has failed to meet her burden, characterizing her conclusion that plaintiff retains the residual functional capacity to perform a limited range of light work (and hence a significant number of jobs that are available in the regional and national economy) as legal error.

Although plaintiff asserts a host of errors related to the Commissioner's assessment of her mental as well as her physical condition, the adjudication of the instant motions ultimately turns on whether the Commissioner erred in basing her assessment of plaintiff's physical impairment on the opinions of Drs. Fizzette and Tippett, both of whom examined plaintiff at the request of DDS, rather than on the opinion of Dr. Moore, plaintiff's treating family practitioner. The court begins this analysis by noting that the opinion of a disability benefits claimant's treating physician, while not necessarily conclusive as to either the claimant's physical condition or the ultimate issue of disability, is generally entitled to considerable weight in making those determinations. See Andrews v. Shalala, 53 F.3d 1035, 1041-42 (9th Cir. 1995) (citation and internal quotation marks omitted) (observing that

UNITED STATES DISTRICT COURT
For the Northern District of California

"more weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual"). Thus, even if the treating physician's opinion is contradicted by other testimony, the Commissioner may not reject that opinion without providing "specific and legitimate reasons" for doing so. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Furthermore, the reasons given must be supported by substantial evidence in the record. Id.

Here, plaintiff's treating physician, Dr. Moore, testified that her physical impairment prevented her from standing, walking, or sitting in the same position for more than ten minutes at a time or from sitting, standing, or walking for more than two to three hours during the course of an eight-hour workday. TR 316-17. Dr. Moore also noted that plaintiff had marked limitations on the ability to complete a normal workweek and would be absent from work more than three times per month. Id. This testimony, together with the testimony of Dr. Mehaffey, the vocational expert retained by the SSA, is sufficient to establish that plaintiff is unable to perform light work, or indeed, to perform any kind of work whatsoever. However, the Commissioner discounted Dr. Moore's testimony, characterizing his pessimistic assessment of plaintiff's condition as inconsistent with his past testimony and "out of proportion" with other evidence in the record. The Commissioner thus concluded that the record as a whole supports a finding that plaintiff is able to perform certain types of light work.

In reaching that conclusion, the only *specific* reason that the Commissioner gave for rejecting Dr. Moore's testimony is the purported inconsistency of the doctor's October 1999 assessment of plaintiff's residual functional capacity and the findings that he set forth in a December 1999 letter to the SSA. In particular, the Commissioner singled out two statements that Dr. Moore made concerning plaintiff's prognosis as probative of his lack of credibility. In the first such statement, set forth in his October 1999 functional capacity assessment, Dr. Moore noted that plaintiff had a "[p]oor prognosis for improvement [;] good prognosis for not worsening." TR 309. In contrast, in his December 1999 letter, Dr. Moore observed that "[plaintiff's] prognosis is good prognosis; [h]er

disease does not worsen rapidly." Id. at 316. The Commissioner found these statements to be contradictory, characterizing the "poor prognosis for improvement" that Dr. Moore found in October 1999 to be inconsistent with his subsequently expressed opinion that plaintiff's prognosis is a "good prognosis."

Plaintiff argues that this is not a legitimate reason for rejecting Dr. Moore's testimony, and the court agrees. Even assuming *arguendo* that it is within the Commissioner's discretion to read the above-cited passages of Dr. Moore's testimony in isolation, the prognosis set forth in the October 1999 functional capacity assessment is entirely consistent with the opinion that he expressed in his December 1999 letter to the SSA. In both documents, Dr. Moore states that plaintiff's prognosis for improvement was poor but that her condition was unlikely to deteriorate. In other words, plaintiff's condition was likely to remain the same in the foreseeable future. Id. Simply put, his opinion as to that issue did not change between October 1999 and December 1999, and the Commissioner's conclusion to the contrary is not supported by substantial evidence in the record.

Nor is there anything else in the record to suggest that Dr. Moore's assessment of plaintiff's condition changed significantly between October 1999 and December 1999. In the October 1999 functional capacity evaluation, Dr. Moore concluded that plaintiff suffers from limitations on her ability to stand, walk, or sit for extended periods of time that at least raise serious doubts about her ability to perform light work. Id. at 309-15. His December letter contains the identical limitations; there is no inconsistency. Id. at 316-17. In commenting on Dr. Moore's opinion of plaintiff's physical symptoms interfering with her concentration, the ALJ found this to be inconsistent with Dr. Boyd's report only four months earlier. This is inexplicable and the ALJ offers no explanation. The only reference to concentration in the Boyd report states that "some mild concentration defects were noted." Id. at 308. The remainder of the Boyd report is devoted to plaintiff's mental status examination. As a psychologist, Dr. Boyd performed a psychological evaluation, not a physical examination. The six words he iterates regarding plaintiff's concentration abilities make up the only part of his report that intersects with Dr. Moore's reports. And, once again, they are not inconsistent. Thus, the purported inconsistencies cited in the findings cannot be a "legitimate" basis for rejecting a

UNITED STATES DISTRICT COURT
For the Northern District of California

treating physician's assessment of a disability benefits claimant's physical condition.

As this is the only "specific" reason that the Commissioner gave for rejecting Dr. Moore's opinion—the ALJ's conclusion that Dr. Moore's opinion regarding plaintiff's functional impairment was "out of proportion with other significant evidence in the record" could hardly be any less so—the court is compelled to conclude that the Commissioner erred in his assessment of Dr. Moore's testimony. However, because it is not clear from the record that the Commissioner would be required to find plaintiff to be disabled if Dr. Moore's testimony were credited, since Moore stated that plaintiff was "capable of some low-stress job", id. at 316, the court finds that it is appropriate to remand plaintiff's claim for further administrative proceedings, which will provide the Commissioner with the opportunity to reconsider the evidence pertaining to plaintiff's residual functional capacity and, if necessary, to take additional testimony relevant to that issue. Accord Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) (noting that remand to reconsider an error in weighing evidence of a plaintiff's eligibility for disability benefits is warranted unless there are no outstanding issues that must be resolved before a determination of disability can be made and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited). The court therefore grants plaintiff's motion for summary judgment and remands this action to the Commissioner for further consideration of her claim.[2]

CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment. This action is hereby REMANDED to the Commissioner for further proceedings consistent with the foregoing order. The clerk shall close the file.

IT IS SO ORDERED.

Date: August 5, 2005

MARILYN HALL PATEL
District Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

**ENDNOTES**

1. For reasons that will become apparent in the following discussion, the court need not address plaintiff's mental impairment in any detail.

2. In light of this disposition, the court need not reach plaintiff's argument that the Commissioner erred in concluding that her mental impairment was not disabling.